# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| EDMUND K. GIBBONS III | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | |
| | § | |
| AMY SCHWARTZ, JAMES LANE, | § | NO. [to be assigned] |
| KATE FRANKLIN, MAYRA CUEVAS, | § | |
| LUCY JAMES, and DOES 1-100 | § | |
| (OTHER ADMINISTRATORS OR | § | |
| MANAGERS OR RESIDENT | § | |
| TEACHERS OF THE NEW | § | |
| KADAMPA TRADITION) | § | |
| | § | |
| Defendant. | § | |

**COMPLAINT FOR DEFAMATION, DEFAMATION PER SE, CIVIL
CONSPIRACY, AND VIOLATION OF THE AMERICANS WITH DISABILITIES
ACT (ADA)**

Plaintiff, Kurt (Edmund) Gibbons III ("Plaintiff"), brings this civil action against **Amy
Schwartz, James Lane, Kate Franklin, Mayra Cuevas, and Lucy James** and **Does
1-100 Other Administrators or Managers or Resident Teachers of the New
Kadampa Tradition** (collectively, "Defendants") for defamation per se, civil conspiracy,
and disability discrimination arising from a multi-year pattern of rumor-based exclusion
across Kadampa Buddhist centers in the United States and abroad.

## I. JURISDICTION AND VENUE

1. Plaintiff also asserts supplemental jurisdiction under **28 U.S.C. §1367** for related
   state-law claims arising from the same nucleus of operative facts.

2. This Court has subject matter jurisdiction under **28 U.S.C. §1332** (diversity of
   citizenship, amount in controversy exceeds $75,000 per defendant).

3. This Court also has federal question jurisdiction under **28 U.S.C. §1331** for
   claims arising under the **Americans with Disabilities Act, 42 U.S.C. §12182**, and
   the **Rehabilitation Act, 29 U.S.C. §794**. Upon information and belief, one or
   more Defendant centers receive federal financial assistance, triggering Section

504 coverage under the Rehabilitation Act.

4. Venue is proper in this District under **28 U.S.C. §1391(b)** because Defendant Amy Schwartz resides and works in this district (Kadampa Meditation Center New York, 47 Sweeney Road, Glen Spey, New York 12737), and substantial events giving rise to this claim occurred here.

5. Plaintiff intends to attend teachings, retreats, and pujas at KMC New York and affiliated centers in the near future and would do so but for Defendants' exclusionary policies and rumor-based bans. Plaintiff will return immediately upon cessation of these policies and a written assurance of equal access, thereby establishing a real and immediate threat of repeated injury remediable by injunction.

**Personal Jurisdiction**

Each Defendant purposefully directed tortious conduct at New York and/or participated in a conspiracy with overt acts and effects in New York, including the November 2023 publication by Defendant Amy Schwartz at KMC-NY ("concerns of violence") that was repeated and relied upon by co-Defendants. New York's long-arm statute (CPLR 302(a)(1), (a)(3)) is satisfied, and co-conspirator jurisdiction applies. See also *Calder v. Jones*, 465 U.S. 783 (1984) (the "effects" test). (anchored by Exhibit 12; see also consolidated pattern in Exhibit 06.)

Each Defendant's defamatory communications foreseeably caused harm in New York, where the initial publication ("concerns of violence," Exhibit 12) originated and where reputational injury continues to occur.

**II. PARTIES**

- **Plaintiff:**
  Kurt (Edmund) Gibbons III, a U.S. citizen, domiciled in Texas. Plaintiff is a 100% **service-connected disabled veteran** (see Exhibit 18), protected under federal disability rights statutes.

- **Defendants:**

  ○ **Amy Schwartz,** (former) Administrative Director, KMC New York.
    - 47 Sweeney Rd, Glen Spey, NY 12737-6166
    - 6701 E Mountain Ranch Rd, Williams, AZ 86046-9207

  ○ **James Lane,** Administrative Director, IKRC Arizona.
    - 13040 10th Ave NW, Seattle, WA 98177-4106
    - 6701 E Mountain Ranch Rd, Williams, AZ 86046-9207

  ○ **Kate Franklin,** Administrative Director, KMC Colorado.

- 10609 W Milan Pl, Denver, CO 80235-1116
- 4840 West 29th Ave, Denver, CO 80212

○ **Mayra Cuevas,** Administrative Director, KMC Georgia.
- 460 Autry St, Norcross, GA 30071
- 198 Wingo St, Norcross, GA 30071
- 741 Edgewood Ave NE, Atlanta, GA 30307

○ **Lucy James,** Resident Teacher, KMC Colorado.
- 6343 Utica St, Arvada, CO 80003-1471
- 4840 West 29th Ave, Denver, CO 80212

○ **Does 1-100,** unknown administrators, managers, and resident teachers of the New Kadampa Tradition (NKT) who acted in concert with named defendants.

## III. FACTUAL ALLEGATIONS

4. **Background - Origin of Rumor Circulation**
Before the exclusions described below, Plaintiff was an active participant in the New Kadampa Tradition's Kadampa Meditation Center Texas - Teacher Training Program (TTP) - community from 2010 to 2021. In the summer of 2021, a personal legal matter unrelated to any NKT activity became the subject of local rumor within that community. Plaintiff complied fully with all court-ordered mental-health and rehabilitation requirements, successfully completed the program, and the case was later expunged by court order. Despite its legal closure, this event became the apparent source of gossip within the Texas TTP group that later spread to other centers through internal administrator communications, as evidenced by the identical language later used by Defendants (see Exhibit 06). Despite full legal resolution and rehabilitation, Defendants later republished this expunged matter through rumor, in disregard of truth or process. This conduct contradicts the Kadampa teachings on compassion, patience, and the transformation of adversity into spiritual growth that the Defendants themselves promote (*Modern Buddhism*, Part Two: Training in Compassion).

Despite no organizational complaint or record of misconduct, these internal rumors were treated as fact.

5. **Continuing Exclusion Within the Texas TTP (2021)**
Following this period, the resident teacher at Kadampa Meditation Center Texas at the time, **Gen Menla (Emerson Mitchell Sanborn),** informed Plaintiff that because of Plaintiff's [lack of] in-person "attendance" during the COVID period, he should not return to the center or participate in any discussions within the Teacher Training Program. This directive effectively barred Plaintiff from the very study and dialogue that define TTP membership and marked the beginning

of a broader pattern of exclusion that later spread to other centers. (see Exhibit 16)

Plaintiff was a formally enrolled Teacher Training Program student, having signed the standard NKT TTP Commitment and Attendance Agreement. The agreement requires consistent study, moral discipline, and participation but provides no authority for permanent exclusion based on rumor or personal bias. (see Exhibit 21)

Previously, while an active member of **KMC Texas (2010-2021),** Plaintiff served as the center's **webmaster** and an authorized **sanctioned teacher** under NKT guidelines. He also **established the first veteran-support initiative in NKT history,** creating a fund that enabled U.S. veterans to attend classes free of charge. In addition, Plaintiff **designed KMC Texas's official t-shirt logo,** which the center continues to use to this day. These contributions reflect Plaintiff's deep commitment, creativity, and service to the community-making his subsequent exclusion by local administrators without process or explanation especially arbitrary and contrary to NKT's own internal rules of kindness and fairness. (see Exhibit 20 - Records of Service)

6. From 2021 through 2025, Plaintiff was repeatedly excluded from retreats, residencies, and volunteer opportunities across NKT Centers in the U.S. and Spain.

7. Exclusions were based on **false, defamatory, and discriminatory statements**, such as, but not limited to:

    a. **Aug. 2025 - Defendant James Lane:** denied Plaintiff's volunteer application, stating there were "*problems at other centers*" (blocking participation). When questioned by Plaintiff in person, Defendant Lane acknowledged he had no personal knowledge or details of any such problems, and could not name any "other center" specifically, and advised Plaintiff to "*speak with Amy Schwartz.*" From this exchange, it is evident that Defendant Lane's statement originated from Defendant Schwartz's prior defamatory communication made in New York. Lane republished the allegation without investigation or corroboration, recklessly accepting it as true. (see Exhibit 09)

    Under the **republication doctrine**, a person who repeats or disseminates another's defamatory statement adopts it as their own and incurs the same liability. See *Restatement (Second) of Torts* § 578 (1977); *Cianci v. New Times Publ'g Co.*, 639 F.2d 54, 60 (2d Cir. 1980) ("Each repetition of a defamatory statement constitutes a new publication.").

    Defendant Lane's repetition of Schwartz's false accusation without investigation or corroboration therefore constitutes **a separate act of defamation per se**, made with reckless disregard for the truth and in

concert with other administrators to perpetuate the same defamatory narrative. (see Exhibit 09)

Previously, in 2020 through 2021, Plaintiff had served for approximately one year as **webmaster for the International Kadampa Retreat Center ("IKRC Grand Canyon")**, working under the same administrative structure that Defendant Lane later directed. During that period, Plaintiff performed extensive technical and media work, including festival web design and system maintenance, until being silently removed from the position without notice, as documented in Exhibits 17 and 20. Defendant Lane's later exclusion of Plaintiff therefore contradicts Plaintiff's established record of trust, reliability, and contribution within the IKRC's own operations, reinforcing the pattern of rumor-based retaliation and bad-faith exclusion.

**Legal Reference:** Under *Restatement (Second) of Torts* §578 (1977) and *Cianci v. New Times Publ'g Co.*, 639 F.2d 54 (2d Cir. 1980), each repetition of a defamatory statement constitutes a separate publication. Moreover, liability attaches where a defendant republishes another's statement with reckless disregard for its truth. See also *Khawar v. Globe Int'l, Inc.*, 19 Cal. 4th 254, 273 (1998) (adopting *Restatement* §578) and *Karaduman v. Newsday, Inc.*, 51 N.Y.2d 531, 545 (1980) (same principle under New York law).

Defendant Lane's republication of Defendant Schwartz's defamatory statement without any effort to verify or investigate its accuracy therefore constitutes an **independent act of defamation per se** and satisfies the elements of **reckless disregard and concerted action** under *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983).

b. **Jan. 2024 & Aug. 2025 - Defendant Kate Franklin**: denied Plaintiff permission to attend teachings in person, citing "*for the safety of yourself and others.*" (see Exhibit 11). This statement was later **contradicted by Defendant Franklin's own subsequent correspondence** in August 2025, in which she welcomed Plaintiff to attend classes and events at the same center while still prohibiting overnight stays. (see Exhibit 07). The contrast between these two communications demonstrates that the earlier "*safety*" justification was knowingly false, unsupported by any factual basis, and used as a pretext for exclusion. Such conduct falls outside any legitimate administrative discretion.

**Legal Reference:** Under **C.R.S. § 13-80-103(1)(a)** and *Williams v. District Court*, 866 P.2d 908 (Colo. 1993), a defamatory statement includes any false communication that tends to injure one's reputation or subject them to public contempt. Defendant Franklin's statements implied Plaintiff posed a danger to others, constituting **defamation per se** under Colorado law.

c.  **Nov. 2023 - Defendant Lucy James:** personally refused Plaintiff
    permission to attend classes at KMC Colorado, stating only, "*we are not
    ready for you to do that yet.*" (see Exhibit 14). No explanation or policy
    basis was provided. This refusal mirrored the same rumor-based
    exclusions originating from Defendant Amy Schwartz in New York and
    continuing through other administrators, extending the pattern of
    defamation and discriminatory denial of access across centers.

    Previously, in 2011, Plaintiff previously collaborated directly with
    Defendant Lucy James during the release of the NKT's first official
    eBook, **Modern Buddhism**, and the development of
    **KadampaBookings.com**, the international registration site still used for
    all NKT International festivals (see Exhibit 20). Her later refusal of access
    thus contradicts her own prior experience of Plaintiff's reliability and
    contribution within the organization.

    **Legal Reference:** *Restatement (Second) of Torts § 563* (1977) and *Bust v.
    Active Traders, LLC*, No. 21-cv-01606, 2022 WL 17852741 (D. Colo.
    Dec. 22, 2022)* - a statement is defamatory if it conveys a false
    implication of undisclosed defamatory facts. Defendant James's refusal
    implied undisclosed misconduct, qualifying as actionable **defamation per
    se**.

d.  **Nov. 2023 - Defendant Amy Schwartz**: denied Plaintiff a three-month
    retreat at KMC New York, stating there were "*concerns of violence.*" (see
    Exhibit 12). This was the first known publication of that allegation, made
    without any factual basis, incident, or complaint on record. Defendant
    Schwartz offered no explanation or opportunity for response but stated
    that Plaintiff could "*come back in one year.*" When Plaintiff attempted to
    return after that period, the exclusion remained in place without review or
    communication-mirroring the same indefinite treatment later used by
    Defendant James Lane and others. Defendant Schwartz's statement,
    originating in New York, became the foundation for subsequent
    republications by other administrators, including Defendants Lucy James,
    Kate Franklin, and James Lane, perpetuating the same defamatory and
    discriminatory narrative across multiple centers. This single New York
    publication foreseeably caused multi-state republication.

    Previously, in 2019, Defendant Schwartz personally invited Plaintiff to
    assist with technical preparations at the IKRC Grand Canyon, requesting
    his help installing a live-video link for the NKT Fall Festival (see Exhibit
    20). Two years later, the same retreat center, under a new administrator,
    denied Plaintiff attendance (see Exhibit 17), illustrating the dramatic shift
    from trust to exclusion.

    **Legal Reference:** *Liberman v. Gelstein*, 80 N.Y.2d 429 (1992) and
    *Restatement (Second) of Torts § 570* - accusations implying criminal or

violent conduct are **defamation per se** under New York law and require no proof of special damages.

e. **Oct. 2023 & Aug 2025 - Defendant Mayra Cuevas:** during a phone conversation, denied Plaintiff an overnight stay in the center, citing that Plaintiff had been "*acting strange*" in 2022. She further stated that, although Plaintiff had stayed there before her tenure, she would not permit anyone to stay unless she had known them personally for fifteen years or more. **Plaintiff had never met Cuevas prior to this call and did not know her during the 2022 Fall Festival; therefore, the alleged "*acting strange*" information could only have been obtained from third parties.** (Verbal statement; Exhibit 13 background reference; see Exhibit 06, Oct. 2023 entry, Exhibit 08 Aug 2025 Ignored Request)

This arbitrary "*fifteen-year familiarity*" rule appears nowhere in NKT's official Safeguarding or Disciplinary Policies and conflicts with the organization's stated open-access mission. (see Exhibits 04 & 05)

**Legal Reference:** *O.C.G.A.* § 51-5-1 (defining libel and slander) and *Cottrell v. Smith*, 299 Ga. 517 (2016) - false statements imputing mental instability or untrustworthiness constitute **defamation per se** under Georgia law.

f. Plaintiff listed **Gen Dechok**, Resident Teacher at **KMC Georgia**, as a personal reference on his 2023-2024 retreat and volunteer applications. (see Exhibit 13). Gen Dechok later confirmed she was never contacted by any administrator regarding Plaintiff's suitability. Instead, **Defendant Amy Schwartz** at **KMC New York** bypassed the provided references and relied on undisclosed sources of her own choosing when issuing her November 2023 "concerns of violence" statement.

Two years later, **Defendant James Lane**, Administrative Director at **IKRC Arizona**, similarly admitted that he had **not contacted any of Plaintiff's listed references** and had instead relied on information passed to him by Defendant Schwartz. This replicated the same procedural bypass and rumor-based decision-making, demonstrating that the defamatory narrative initiated by Defendant Schwartz in New York had been accepted and repeated by Lane without independent verification or inquiry.

This coordinated refusal to use Plaintiff's listed references and the reliance on undisclosed, rumor-based sources demonstrates an intentional pattern of administrative collusion, rather than isolated mistakes, forming the factual basis for Plaintiff's civil conspiracy claim.

g. **Coordinated Inter-Center Communications and Pattern of Rumor-Based Exclusion:** The five named Defendants, each serving as administrative directors or resident teachers at different Kadampa

Meditation Centers (KMCs) and International Kadampa Retreat Centers (IKRCs) within the same NKT corporate hierarchy, acted in concert to maintain and disseminate false and defamatory information about Plaintiff. Their repeated admissions that they "heard" of unspecified "concerns of violence," (Defendant Amy Schwartz, see Exhibit 12) combined with their consistent refusal to identify their sources or use Plaintiff's listed references (see Exhibit 13), demonstrate a coordinated back-channel of communication among NKT managers, administrators and resident teachers.

Defendant James Lane explicitly referred Plaintiff to Defendant Amy Schwartz as the source of his exclusion rationale (see Exhibit 09). Defendant Schwartz's "concerns of violence" statement in New York was subsequently relied upon by Defendants; Lane in Arizona, Franklin and James in Colorado, and Cuevas in Georgia. All Defendants operate under the same organizational umbrella, attend the same regional and international administrative meetings, and communicate regularly regarding festival participation and residency eligibility. Such communications were not random; NKT's internal structure (see Exhibit 04) requires monthly directors' meetings, where these narratives were likely reinforced. These coordinated acts of rumor circulation and exclusion, each echoing the same defamatory language and policy pretext, constitute an intentional **civil conspiracy** to defame and discriminate against Plaintiff across state lines.

See *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983) ("Conspirators may be held liable for the reasonably foreseeable acts of their co-conspirators done in furtherance of the conspiracy.").

This closed-door information exchange, unverifiable, undisclosed, and echoed across continents, constitutes circumstantial evidence of an ongoing concerted plan meeting all elements of *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)

h. Each of these statements was made without evidence, investigation, or opportunity for response. Collectively, they demonstrate a cross-center pattern of rumor circulation rather than isolated misunderstanding - a pattern documented in detail in Exhibit 06 (Consolidated Table of Evidence).

8. Defendants provided no evidence, no process, and no opportunity to contest these accusations. (see Exhibit 01, 02, & 03)

9. These statements impute criminal, violent, or dangerous behavior, constituting **defamation per se** under the laws of New York, Colorado, Georgia, and Arizona. (see Exhibit 06 - page 4)

10. The exclusions are prolonged and indefinite, exceeding even NKT's own rules (which limit disciplinary exclusion for ordained monks/nuns to only one year, see Exhibit 04 - 11§2).

11. Plaintiff is a **disabled veteran** (see exhibit 18) who has been denied equal access to spiritual and community services offered to the public, in violation of federal disability rights.

12. Earlier incidents from 2021 to 2022 are pled as **background** demonstrating pattern and malice; timely claims are based on publications from 2023-2025. (see Exhibit 06 timeline)

## IV. CAUSES OF ACTION

### COUNT 1 - DEFAMATION PER SE

13. Statements such as "concerns of violence" (see Exhibit 12) and "for the safety of others" (see Exhibit 11) explicitly impute criminal or violent propensity and are therefore defamatory per se.

14. Defendants published statements imputing violent or criminal conduct.

15. Such statements are **defamatory per se** under the Restatement (Second) of Torts, including § 559 (defamatory meaning) and § 570 (slander actionable per se), and under parallel state laws.

### COUNT 2 - DEFAMATION

16. Defendants made false statements to third parties, without privilege, causing reputational and material harm to Plaintiff.

    See also *Gross v. New York Times Co.*, 82 N.Y.2d 146 (1993) (opinion privilege defeated when statement implies undisclosed facts).

17. The statements were made negligently and, upon information and belief, with actual malice.

    Defendants' statements are not protected opinion, because they imply the existence of undisclosed defamatory facts. Any asserted common-interest privilege is defeated by malice, reckless disregard for truth, refusal to investigate, and republication after notice.

### COUNT 3 - CIVIL CONSPIRACY (ALL DEFENDANTS)

18. Plaintiff realleges all preceding paragraphs.

Defendants Amy Schwartz, James Lane, Kate Franklin, Mayra Cuevas, and Lucy James, together with other unidentified NKT administrators or managers or resident teachers (Does 1-100), entered into an agreement, express or implied, to injure Plaintiff's reputation and exclude him from organizational participation through the coordinated dissemination of false statements regarding his character and alleged "concerns of violence."

Each Defendant performed overt acts in furtherance of this common plan by (a) repeating or relying upon defamatory statements made by other Defendants, (b) denying Plaintiff access to public religious programs on pretextual grounds, and (c) concealing the identities of their alleged "sources."

This conduct satisfies the elements of civil conspiracy under *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), as adopted by courts nationwide, and under analogous state tort doctrines (e.g., *Kovach v. District Court*, 491 P.2d 684 (Colo. 1971); *Kovacs v. Cooper*, 336 U.S. 77 (1949)).

As a direct and proximate result, Plaintiff has suffered reputational, economic, and emotional harm. Defendants are jointly and severally liable for all resulting damages.

Each Defendant's repetition of the same defamatory language across jurisdictions, coupled with their shared organizational authority, satisfies the elements of concerted action and common motive.

## COUNT 4 - VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA) AND REHABILITATION ACT

19. Plaintiff is a qualified individual with a disability (service-connected disabled veteran, see Exhibit 18).

20. Defendants operate meditation centers and retreat facilities **open to the general public**, qualifying as **places of public accommodation under 42 U.S.C. §12181(7)(K)**.

    Defendants' centers publicly solicit attendance and donations through nationwide websites and Eventbrite links, underscoring their status as public accommodations under **42 U.S.C. § 12181(7)(K)**.

21. Defendants discriminated against Plaintiff by denying him equal access to programs, retreats, and services because of disability, using vague stereotypes ("concerns of violence," "acting strange") rather than individualized assessment.

22. Defendants failed to provide reasonable modifications or engage in the required interactive process to accommodate Plaintiff's participation.

23. These actions constitute violations of **ADA Title III** and **Section 504 of the Rehabilitation Act**.

24. Upon information and belief, one or more Defendant centers receive federal financial assistance, triggering Section 504 coverage under the Rehabilitation Act.

25. **ADA Coverage Clarification.** Plaintiff alleges disability discrimination in access to publicly advertised programs and services. Title III of the ADA generally prohibits discrimination by places of public accommodation, 42 U.S.C. § 12182, but **exempts "religious organizations or entities controlled by religious organizations"** from Title III's requirements. 42 U.S.C. § 12187; see also DOJ guidance confirming the full Title III exemption for religious entities.

    In the alternative, to the extent Defendants receive or have received **federal financial assistance**, they are subject to **Section 504 of the Rehabilitation Act**, which independently prohibits disability discrimination. 29 U.S.C. § 794; DOJ overview.

    Plaintiff pleads ADA Title III **in the alternative** pending discovery on (i) whether specific Defendant centers or their festival operations are **separately incorporated entities** not covered by the religious exemption, and (ii) whether any Defendant center received federal funds, triggering Section 504.

## COUNT 5 - DEFAMATION BY IMPLICATION

26.  Defendants' statements and bans conveyed false, defamatory implications, e.g., that Plaintiff posed a danger ("for the safety of yourself and others", "concerns of violence") or was unfit to attend ("we are not ready for you to do that yet"), which implied undisclosed defamatory facts.

27. These implications were reasonably understood by recipients as factual, not mere opinion, and were made with at least negligence and, upon information and belief, actual malice. (see Exhibits 10-12; consolidated in Exhibit 06)

28. The repeated phrasing across centers; "safety," "concerns of violence," and "problems at other centers", conveys an identical defamatory implication that Plaintiff is dangerous or unstable, a meaning reasonably understood as factual by recipients.

## V. DAMAGES

29. Plaintiff has suffered reputational harm, loss of Dharma opportunities, mental anguish, economic disruption, and emotional distress.

30. Plaintiff seeks (*Plaintiff does not seek punitive damages under ADA Title III; those are available only under the defamation and conspiracy counts*):

- Plaintiff reserves the right to amend this demand after discovery reveals the full extent of reputational and economic loss.

- **$1,000,000 in general and punitive damages per Defendant** (totaling at least $5,000,000 for the five named defendants, plus additional sums against Does 1-100).

  - Given the multi-year, multi-jurisdictional nature of Defendants' conduct, the requested damages are proportional to the scope of reputational and emotional harm sustained.

- Injunctive relief prohibiting further reliance on rumor-based exclusions.

- Orders requiring compliance with ADA accommodation procedures.


## VI. PRAYER FOR RELIEF

Plaintiff respectfully requests judgment against Defendants for:

- General and punitive damages in an amount not less than $1,000,000 per Defendant;

- Publication of a written apology and retraction to all NKT administrative mailing lists and affiliated center directors and resident teachers;

- Injunctive relief to prohibit defamatory rumor-based exclusions;

- **ADA (Title III) Relief:** Permanent injunction requiring Defendants to: (a) cease reliance on rumor-based exclusions; (b) adopt and publish a written policy requiring individualized assessment and reasonable modifications; (c) designate an ADA coordinator and implement staff training; (d) issue a written retraction to internal lists and staff; and (e) allow Plaintiff equal access to programs and retreats with any reasonable accommodations. (Fees and costs under 42 U.S.C. § 12205.) *No damages are sought under Title III; damages are sought under the defamation counts.*

- Attorneys' fees and costs under ADA fee-shifting provisions;

- Any other relief the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

**Respectfully submitted,**

**Kurt (Edmund) Gibbons III**
101 Rainbow Dr. #13354
Livingston, TX 77399
Email: kurtgibbonsiii@pm.me
Date: October 21, 2025

**Exhibit Index - Civil Complaint of Kurt Gibbons III v. Amy Schwartz et al.**

| Exhibit No. | Title / Description | Purpose / Relevance |
|---|---|---|
| **Exhibit 01** | Litigation Hold Notices & Delivery Records | Proof of formal notification to all defendants; establishes notice and silence (no responses). |
| **Exhibit 02** | Litigation Hold Emails | Confirms electronic service of litigation holds with timestamps. |
| **Exhibit 03** | NKT Official Complaint | Demonstrates internal attempts to resolve matters before litigation. |
| **Exhibit 04** | NKT Internal Rules | Shows the governing organizational standards Defendants violated. |
| **Exhibit 05** | Safeguarding Policy - Kadampa Buddhism | Establishes duty of care and equal-treatment obligations. |
| **Exhibit 06** | Consolidated Table of Evidence | Chronological summary of defamation, exclusion, and conspiracy across centers (2021-2025). |
| **Exhibit 07** | KMC Colorado Request - August 2025 | Evidence of exclusion without cause; continuation of defamatory pattern. |
| **Exhibit 08** | KMC Georgia Request - August 2025 | Example of refusal by silence; consistent with pattern of discrimination. |
| **Exhibit 09** | IKRC Arizona Volunteer Denial - August 2025 | Contains direct statement "problems at other centers," republishing defamation. |
| **Exhibit 10** | KMC Colorado - Lucy James Correspondence - February 2024 | Demonstrates Defendant Lucy James's ongoing endorsement of exclusion without cause. |
| **Exhibit 11** | KMC Colorado - Tara Empowerment / TTP Denial - January 2024 | "For the safety of yourself and others" statement; clear defamation per se. |
| **Exhibit 12** | KMC New York - Mahamudra Retreat Denial - November 2023 | Origin of "concerns of violence" publication; anchors venue and defamation claim. |
| **Exhibit 13** | KMC Georgia - Resident Teacher Reference Verification | Gen Dechok confirms she was never contacted; disproves Defendants' claim of using references. |

| **Exhibit 14** | KMC Colorado - TTP Denial - October 2023 | Example of arbitrary exclusion; "not ready for you to come to the center yet." |
|---|---|---|
| **Exhibit 15** | IKRC Menorca Rejection - June 2023 | Shows international spread of defamatory narrative to Spain. |
| **Exhibit 16** | KMC Texas - TTP Farewell - September 2021 | Establishes Texas TTP community as origin of rumor circulation. |
| **Exhibit 17** | IKRC Arizona - Festival Denial - August 2021 | Demonstrates early exclusion; cross-referenced to Exhibit 20 (Defendant's Amy Schwartz 2019 request for help to Plaintiff) |
| **Exhibit 18** | Veteran Status Verification - VA.gov 2025 | Confirms Plaintiff's 100% service-connected disability; ADA standing. |
| **Exhibit 19** | Center Business Address Verification | Confirms proper venue and service addresses for all Defendants. |
| **Exhibit 20** | Record of Service & Participation (2005-2025) | Documents Plaintiff's 20 years of contributions, including collaborations with Defendants Lucy James and Amy Schwartz. |
| **Exhibit 21** | Teacher Training Program Commitment Form - KMC Georgia | Standard NKT-wide agreement proving formal enrollment and adherence to institutional commitments. |

All exhibits are true and correct copies of the original records or communications maintained by Plaintiff. Page references in the Complaint correspond to these exhibits.